■ In the Matter of KING SERVICE, INC., Doing Business as KING FUELS, Appellant, v TOWN BOARD, TOWN OF MALTA, Respondent.—Casey, J. Appeal from a judgment of the Supreme Court (Ford, J.), entered August 16, 1988 in Saratoga County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to, *inter alia,* remove a condition imposed by respondent in granting a planned development district.

Prior to April 5, 1988, petitioner operated a Sunoco service station on property zoned for residential and agricultural use in the Town of Malta, Saratoga County. As a part of its business use of the property, petitioner maintained a large sign which does not conform to the requirements of the sign provisions of the town's zoning ordinance. Since petitioner's use of the property, including the sign, predated the enactment of the zoning ordinance, petitioner has the right to continue its operation of the business, including maintenance of the sign, as a prior nonconforming use. Respondent has conceded the existence of this right throughout the administrative and judicial proceedings under review.

Desiring to make substantial changes in its commercial operation, including the addition of a convenient retail store, and confronted with a zoning ordinance which prohibits the expansion of nonconforming uses, petitioner sought an amendment to the zoning ordinance to create a planned development district for its property, which would permit the desired commercial expansion. Respondent granted petitioner's application and created the King Fuels, Exit 12 Planned Development District by an amendment to the zoning ordinance effective April 5, 1988. The amendment contains nothing which affects petitioner's right to continue its nonconforming use of the property as a service station, including maintenance of the sign. However, the amendment does impose a number of conditions which petitioner must meet before final approval of its proposed expansion will be granted. The only condition about which petitioner has an objection is that concerning removal of the sign.

We begin our analysis by noting that petitioner's use of the property as a service station and the maintenance of the sign are not separate and distinct nonconforming uses. Petitioner has argued throughout the course of these proceedings that the sign is an integral and necessary part of its business, and

the sign would be of little value to anyone in the absence of the business. Thus, petitioner's use of the property as a service station and its maintenance of a sign on that property to advise motorists of the existence and location of the service station are so integrally related that they cannot be considered as separate and distinct nonconforming uses.

Next, we are of the view that the principles set forth in *Modjeska Sign Studios v Berle* (43 NY2d 468, *appeal dismissed* 439 US 809) are inapplicable here since the ordinance at issue does not require immediate removal of the sign. On the contrary, as conceded by respondent, petitioner has the right to continue the nonconforming use of its property, including maintenance of the sign. Removal of the sign is required only as a condition to approval of petitioner's proposed expansion of its commercial operation.

It is undisputed that the zoning ordinance authorizes the imposition of conditions upon the creation of a planned development district, and in exercising its zoning powers respondent has the inherent authority to impose reasonable conditions or safeguards in conjunction with a change of zone *(see, Matter of Dexter v Town Bd.,* 36 NY2d 102, 105). Accordingly, the issue distills to whether the condition is a reasonable one, related to the real estate involved *(supra).* We hold that the condition meets this test, for it not only promotes the aesthetic purpose underlying the sign provisions of the zoning ordinance, but the amendment as a whole advances a more fundamental zoning goal. There is "a strong policy favoring the eventual elimination of nonconforming uses" *(Matter of Off Shore Rest. Corp. v Linden,* 30 NY2d 160, 164), and the amendment at issue promotes this strong policy by rezoning petitioner's property so that petitioner's commercial use of the property is no longer a nonconforming use; if petitioner expands his business and removes the sign as a condition of approval for the expansion, all nonconforming aspects of petitioner's use of its property will be eliminated.

Petitioner's main argument on appeal is that the condition requiring removal of the sign is an unconstitutional taking of its property. In *Nollan v California Coastal Commn.* (483 US 825, 834, quoting *Agins v Tiburon,* 447 US 255, 260), the Supreme Court reiterated the well-settled principle "that land-use regulation does not effect a taking if it 'substantially advance[s] legitimate state interests' and does not 'den[y] an owner economically viable use of his land' ". As noted above, the condition at issue substantially advances legitimate State interests, and petitioner has utterly failed to establish that

the condition denies petitioner economically viable use of its property. It is apparent that petitioner's property has been used for the operation of a service station for some 30 years and there is no claim that this operation, which remains unaffected by the condition if petitioner elects not to go forward with its plan for expansion, is economically unviable. At best, petitioner has submitted proof suggesting that its proposed expansion might not be economically viable without the sign.

Judgment affirmed, without costs. Kane, Casey and Yesawich, Jr., JJ., concur.

Mahoney, P. J., and Weiss, J., dissent and vote to reverse in a memorandum by Mahoney, P. J. Mahoney, P. J. (dissenting). We respectfully dissent. Our disagreement with the majority is basically over whether the sign and service station constitute a single nonconforming use or two separate nonconforming uses. Although we cannot dispute that the sign's purpose is closely related to the service station, we do not think that this fact undermines our view that the sign and service station constitute two distinct nonconforming uses. The service station is a nonconforming use by virtue of its location in an R-1 zone where service stations are not permitted. The sign is a nonconforming use because its size is larger than that allowed. Thus, the service station is a nonconforming use because of proscribed conduct whereas the sign is a nonconforming use because of proscribed structures. The difference between nonconforming conduct and nonconforming structures is genuine and has even been characterized as "critical" (1 Anderson, New York Zoning Law and Practice § 6.02, at 199 [3d ed]). The presence of this essential distinction supports our conclusion that the sign and service station constitute two separate and distinct nonconforming uses.

The issue thus distills to whether a municipality can condition the improvement and expansion of a nonconforming use, here the service station facility, upon the termination of a separate and distinct nonconforming use, here the sign. While in the past nonconforming uses were permitted to continue if enforcement of the ordinance caused serious financial harm to the property owner (see, People v Miller, 304 NY 105, 109), it now appears settled that a nonconforming use is subject to a municipality's zoning power but cannot be terminated summarily (1 Anderson, New York Zoning Law and Practice § 6.55, at 302 [3d ed]). The Court of Appeals has concluded that a municipality can constitutionally terminate a nonconforming "use after a period of time sufficient to allow a

property owner an opportunity to amortize his investment" *(Matter of Harbison v City of Buffalo,* 4 NY2d 553, 562). More recently, the Court of Appeals reaffirmed that municipalities can terminate a nonconforming use "provided a reasonable amortization period is allowed by the removal ordinance" *(Matter of Suffolk Outdoor Adv. Co. v Town of Southampton,* 60 NY2d 70, 73). In a case challenging a statute requiring removal of billboards for aesthetic purposes after a 6½-year amortization period, the Court of Appeals observed "that it would have been unreasonable to require, solely for aesthetic purposes, the immediate removal of the billboards" *(Modjeska Sign Studios v Berle,* 43 NY2d 468, 478, *appeal dismissed* 439 US 809). Here, the removal condition in the subject ordinance, enacted solely for aesthetic purposes, failed to provide any period of amortization and, therefore, should be found fatally flawed as a vehicle to mandate removal of the Sunoco sign as a nonconforming use.

This conclusion finds support even under the older standard whereby serious financial harm to the property owner would justify continuation of a nonconforming use. The record discloses that the sign was erected at a cost of $36,000. Market research reveals that almost 30% of petitioner's sales are attributable to the sign's existence and location and that removal of the sign could result in a discontinuance of the contractual relationship between petitioner and Sunoco due to reduced profitability. Additionally, the estimated cost of sign removal is at least $35,000. These facts demonstrate a serious financial hardship to petitioner if the sign is summarily removed. For all these reasons, we would reverse Supreme Court's judgment and hold that the subject ordinance, insofar as it conditions the issuance of a building permit or certificate of occupancy upon removal of the Sunoco sign, is unconstitutional and cannot be enforced.