**CITY OF COTTAGE GROVE,**
**Respondent,**

v.

**Floyd OTT, Appellant.**

**No. C8–86–468.**

Court of Appeals of Minnesota.

Oct. 28, 1986.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Michael C. Hutchinson, Clinton & O'Gorman, P.A., Cottage Grove, for respondent.

Steven E. Antolak, Bowman and London, Ltd., St. Paul, for appellant.

Heard, considered and decided by HUSPENI, P.J., and PARKER and RANDALL, JJ.

## OPINION

HUSPENI, Judge.

Floyd Ott appeals from a criminal conviction for violation of a city sign ordinance, a misdemeanor. The appellant argues that he has standing to challenge the constitutionality of the ordinance on its face and that the ordinance is unconstitutional because it places an impermissible burden on noncommercial speech, which is protected by the First Amendment. Although we conclude that appellant was granted standing, we affirm the trial court's determination that the ordinance is constitutional.

## FACTS

The appellant owns a parcel of land abutting Highway 61 in the City of Cottage Grove, Washington County. He leased the property to Bethel Marine, granting Bethel the right to erect a free-standing sign advertising that business. Bethel does not operate a business or offer services on the land leased from appellant.

On March 25, 1985, a citation was issued, charging appellant with a violation of the city's sign ordinance provisions prohibiting placement of off-premises advertising signs. Appellant's motion to dismiss based on the alleged unconstitutionality of the ordinance was denied, and a jury trial was held. Appellant was adjudged guilty, and a motion to vacate the judgment was denied. The trial court ruled that appellant lacked the requisite standing to assert the rights of third parties not before the court against whom the ordinance might be unconstitutionally applied. However, while concluding that appellant lacked standing, the trial court also addressed the substantive issue of the constitutionality of the ordinance, and determined that it was not unconstitutionally overbroad.

## ISSUE

Did the trial court err in determining that appellant lacks standing to challenge the constitutionality of the sign ordinance? If so, is the ordinance an impermissible infringement on speech protected by the First Amendment?

## ANALYSIS

### A. STANDING

The sign at issue is clearly a commercial expression. It involves communi-

cation related solely to the economic interests of the speaker, Bethel Marine, and the audience. *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York,* 447 U.S. 557, 561, 100 S.Ct. 2343, 2348–49, 65 L.Ed.2d 341 (1980). Commercial speech is afforded a limited measure of protection under the First Amendment, and the protection turns on the nature of both the expression and of the governmental interests served by its regulation. *Id.* at 563, 100 S.Ct. at 2350.

Appellant acknowledges that, as applied to commercial speech, Cottage Grove has not drawn an ordinance broader than necessary to meet its interests, nor did it fail to directly advance a substantial governmental interest. Accordingly, he concedes that the city may prohibit the sign located on his property as an expression of commercial speech. However, he argues that the ordinance is facially unconstitutional because it is overbroad and prohibits constitutionally protected noncommercial speech. Therefore, he argues he has standing to assert the rights of others and challenge the overbreadth of the ordinance even though his own commercial speech may properly be prohibited by the city.

The United States Supreme Court has recognized the existence of such a right in certain circumstances. In *New York v. Ferber,* 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982) it stated:

> The traditional rule is that a person to whom a statute may constitutionally be applied may not challenge that statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the Court. * * *
>
> What has come to be known as the First Amendment overbreadth doctrine is one of the few exceptions to this principle * * *. The doctrine is predicated on the sensitive nature of protected expression: "persons whose expression is constitutionally protected may well refrain from exercising their rights for fear of criminal sanctions by a statute susceptible of application to protected expression." * * * It is for this reason that we

have allowed persons to attack overly broad statutes even though the conduct of the person making the attack is clearly unprotected * * *.

*Id.* at 767–69, 102 S.Ct. at 3360–61 (citations omitted).

Here, the trial court determined lack of standing and constitutionality of the ordinance concurrently. It appears that such joint declaration may be tautological, but perhaps unavoidable in the trial court's attempt to apply the rationale of *Ferber.* We conclude, however, that in scrutinizing the provisions of the ordinance for overbreadth and reaching a conclusion on that issue, the trial court did, in fact, grant to appellant the standing he sought to pursue such an overbreadth challenge. *See State by Spannaus v. Century Camera, Inc.,* 309 N.W.2d 735 (Minn.1981).

## B.  CONSTITUTIONALITY

As both parties correctly state, the controlling case regarding the regulation of commercial speech expressed through or in the nature of billboards is *Metromedia, Inc. v. City of San Diego,* 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981).

█ The ordinance at issue in *Metromedia,* like the Cottage Grove ordinance, prohibited off-premises signs containing commercial messages while allowing on-premises signs. The court found that such regulation is permissible and concluded:

> If the city has a sufficient basis for believing that billboards are traffic hazards and are unattractive, then obviously the most direct and perhaps the only effective approach to solving the problems they create is to prohibit them. The city has gone no further than necessary in seeking to meet its ends. Indeed, it has stopped short of fully accomplishing its ends: It has not prohibited all billboards, but allows onsite advertising and some other specifically exempted signs.

*Id.* at 508, 101 S.Ct. at 2893. Like San Diego, Cottage Grove has found that off-premises advertising signs constitute a traffic hazard and are unattractive. As in

*Metromedia,* we must conclude that these interests provide a sufficient basis for regulating billboards. Insofar as the ordinance regulates commercial speech, it meets constitutional requirements. *Id.* at 512, 101 S.Ct. at 2895.

Appellant argues that the constitutional blemish of the ordinance is found in the fact that its definition of advertising sign includes protected speech. He asserts that Cottage Grove prohibits not only commercial speech but also noncommercial speech expressed through the medium of billboards. The ordinance bans all off-premises advertising signs, defined in section 21–2 of the ordinance as:

> A free-standing sign which directs attention to a business, commodity, service or entertainment not exclusively related to the premises where such a sign is located or to which it is affixed.

The definition is very similar to that contained in the ordinance at issue in *Suffolk Outdoor Advertising Co. v. Hulse,* 56 A.D.2d 365, 393 N.Y.S.2d 416, *modified,* 43 N.Y.2d 483, 373 N.E.2d 263, 393 N.Y.S.2d 368 (1977), *appeal dismissed,* 439 U.S. 808, 99 S.Ct. 66, 58 L.Ed.2d 101 (1978). In that ordinance, a billboard was defined as:

> A sign which directs attention to a business, commodity, service, entertainment, or attraction sold, offered or existing elsewhere than upon the same lot where such sign is displayed * * *.

56 A.D.2d at 378–9, 393 N.Y.S.2d at 435.

In contrast, the San Diego ordinance considered in *Metromedia* prohibited any off-premises outdoor advertising sign:

> which advertises or otherwise directs attention to a product, service or activity, event, person, institution or business which may or may not be identified by a brand name and which occurs or is generally conducted, sold, manufactured, produced or offered elsewhere than on the premises where such sign is located.

*Metromedia,* 453 U.S. at 493 n. 1, 101 S.Ct. at 2885 n. 1.

Based upon this broad prohibition, the Court concluded that the San Diego ordinance impermissibly reached protected non-commercial speech and was, therefore, unconstitutional.

In so doing, it observed:

> The city does not explain how or why noncommercial billboards located in places where commercial billboards are permitted would be more threatening to safe driving or would detract more from the beauty of the city. Insofar as the city tolerates billboards at all, it cannot choose to limit their content to commercial messages; the city may not conclude that the communication of commercial information concerning goods and services connected with a particular site is of greater value than the communication of noncommercial messages.

*Id.* at 513, 101 S.Ct. at 2895.

Appellant argues that the Cottage Grove ordinance suffers from the same overbreadth as the San Diego ordinance because it assigns a greater value to commercial messages expressed at a particular site than to noncommercial messages at that same site. We cannot agree. The prohibition of signs in the San Diego ordinance is clearly broader than in the Cottage Grove ordinance.

Instead, we believe the observation of the *Metromedia* court in describing the *Suffolk* ordinance is controlling:

> This definition did not sweep within its scope the broad range of noncommercial speech admittedly prohibited by the San Diego ordinance.

*Id.* at 499, 101 S.Ct. at 2888.

■ The *Metromedia* court concluded that the *Suffolk* ordinance did not reach noncommercial speech but was confined to commercial expression only. *Id.* Because of the similarity between the ordinance at issue and that in *Suffolk,* we must also conclude that the Cottage Grove prohibition of off-premises advertising signs is confined to commercial speech and does not reach noncommercial speech.

■ The city may prohibit commercial speech expressed on billboards based upon its interests in traffic safety and aesthetics.

While appellant has standing to raise the issue of the facial constitutionality of the ordinance, we agree with the trial court that the ordinance is not overbroad. It is a permissible regulation of commercial speech, and does not reach protected non-commercial speech.

## DECISION

The Cottage Grove sign ordinance does not impermissibly burden speech protected by the First Amendment.

Affirmed.